No. 24-10147

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### JESSICA NELSON,

*Plaintiff-Appellant,*

v.

### EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellee.*

**Appeal from the United States District Court for the
Northern District of Alabama**

**No. 4:21-cv-894-CLM**

---

## APPELLANT'S SUPPLEMENTAL BRIEF

---

/s/ *W. Whitney Seals*
**W. Whitney Seals, Esq.**
**COCHRUN & SEALS, LLC**
**P. O. Box 10448**
**Birmingham, AL 35202-0448**
**T: (205) 323-3900**
**F: (205) 323-3906**
**E: filings@cochrunseals.com**

/s/ *Brooke B. Rebarchak*
**J. Matthew Stephens, Esq.**
**Brooke B. Rebarchak, Esq.**
**METHVIN, TERRELL, YANCEY,**
**STEPHENS & MILLER, P.C.**
**2201 Arlington Avenue South**
**Birmingham, AL 35205**
**T: (205) 939-0199**
**E: mstephens@mtattorneys.com**
**E: brebarchak@mtattorneys.com**

***Jessica Nelson v. Experian Information Solutions, Inc.***
**Eleventh Circuit Case Number 24-10147**

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>
<u>**AND CORPORATE DISCLOSURE STATEMENT**</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, 1-2, and 1-3, Appellant Jessica Nelson provides the following Certified of Interested Persons and Corporate Disclosure Statement (CIP):

1.      Brinkerhoff Jr., John C. – Counsel for Appellee.

2.      Central Source, LLC – U.S. based indirect subsidiary of Experian plc that is not wholly owned.

3.      Christian & Small, LLP – Counsel for Appellee.

4.      Cochrun & Seals, LLC – Counsel for Appellate.

5.      Experian Holdings, Inc. – Parent company of Appellee Experian Information Solutions, Inc.

6.      Experian Information Solutions, Inc. – Appellee. Experian Information Solutions, Inc., is a wholly owned subsidiary of Experian Holdings, Inc., and the ultimate parent company is Experian plc.

7.      Experian plc (EXPN:LON) – Indirect parent company of Experian Holdings, Inc., and ultimate parent company of Experian Information Solutions, Inc.

8.      Hopson, Thomas E. – Counsel for Appellee.

9.      Johnson, Jeffrey R. – Counsel for Appellee.

10.     Jones Day – Counsel for Appellee.

11.     Maze, Hon. Corey L. – U.S. District Judge for the Northern District of Alabama.

12.     Methvin, Terrell, Yancey, Stephens & Miller, P.C. – Counsel for Appellant

13.     Nelson, Jessica – Appellant.

14.     New Management Services LLC – based indirect subsidiary of Experian plc that is not wholly owned.

15.     Online Data Exchange LLC – U.S. based indirect subsidiary of Experian plc that is not wholly owned.

16.     Opt-Out Services, LLC – U.S. based indirect subsidiary of Experian plc that is not wholly owned.

17.     Proctor, Ryan M. – Counsel for Appellee.

18.     Rebarchak, Brooke Boucek – Counsel for Appellant.

19.     Rice, Amanda K. – Counsel for Appellee.

20.     Roth, Jacob (Yaakow) – Counsel for Appellee.

21.     Seals, W. Whitney – Counsel for Appellant.

22.     Stephens, James Matthew – Counsel for Appellant.

23.     Tobitsch, Kerianne – Counsel for Appellee.

24.     VantageScore Solutions LLC – U.S. based subsidiary of Experian plc that is not wholly owned.

25.     Vogt, John – Counsel Appellee.

26.     Young, Leius Jackson, Jr. – Counsel for Appellee.

No other persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................................ C-1

TABLE OF CONTENTS .......................................................................... i

TABLE OF CITATIONS ......................................................................... ii

INTRODUCTION ................................................................................... 1

STANDARD OF REVIEW ...................................................................... 5

ARGUMENT .......................................................................................... 5

    I.  Nelson Has Shown a Concrete Injury Based on the Cost Incurred and Time
Spent Disputing Her Inaccurate PII. ........................................... 8

        A.  Nelson's Disputed Inaccurate PII Caused Concrete Harm. ….....…....12

        B.  Nelson's Expenditures Are Not Self-Inflicted Harm. ..........................15

    II.  Nelson Also Shows Concrete Injury Because Nelson's Inaccurate PII
Increases the Risk of Identity Theft. …..……………………...…....20

CONCLUSION .......................................................................................24

CERTIFICATE OF COMPLIANCE ......................................................25

CERTIFICATE OF SERVICE ...............................................................26

# TABLE OF CITATIONS

**Cases**                                                                                     **Page(s)**

*Bischoff v. Osceola Cnty., Fla.*,
222 F.3d 874 (11th Cir. 2000) …....………....………...…………………….5

*Barnes v. ARYZTA, LLC*,
288 F. Supp. 3d 834 (N.D. Ill. 2017) ..……………….……...…………… 4

*Bldg. Materials Corp. of Am. v. Henkel Corp.*, No. 6:15-cv-548-Orl-22GJK,
2017 WL 4082440 (M.D. Fla. Apr. 17, 2017) ……………………………… 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .........................................................................15, 16-17

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) …………...……………………………….……23

*Debernardis v. IQ Formulations, LLC*,
942 F.3d 1076 (11th Cir. 2019) ……...…………………………………….5

*Drazen v. Pinto*,
74 F.4th 1336 (11th Cir. 2023) (en banc) …………………………….…5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
528 U.S. 167, 181 (2000) …………….…………………………………….6

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) ……………………………..…….23-24

*Harb v. Westlake Servs. LLC*,
748 F. Supp. 3d 1170 (11th Cir. 2024) ……...……….…………………10

*Holden v. Holiday Inn Club Vacations Inc.*,
98 F.4th 1359 (11th Cir. 2024) …………………....………………………21

*Losch v. Nationstar Mortg., LLC*,
995 F.3d 937 (11th Cir. 2021) …………………...……..…………11-12, 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 561 (1992) …………………………………………..22

*Maron v. Chief Fin. Officer of Fla.*, No. 23-13178,
2025 WL 1416665 (11th Cir. May 16, 2025) …………..………………….5

*Mocek v. Allsaints USA Ltd.*,
220 F. Supp. 3d 910 (N.D. Ill. 2016) …………………….......…………..4

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) (en banc) …………….…………5-6, 15, 17-22

*Pedro v. Equifax, Inc.*,
868 F.3d 1275 (11th Cir. 2017) …………………………..………...9-11, 15

*Phipps v. Experian Info. Sols., Inc.*, No. 7:20-CV-3368 (NSR),
2023 WL 6215304 (S.D.N.Y. Sept. 23, 2023) ………………………………13

*Phipps v. Experian Info. Sols., LLC*, No. 23-7529-cv,
2024 WL 5001842 (2d Cir. Dec. 6, 2024) ……………….…………….12-13

*Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*,
942 F.3d 1200 (11th Cir. 2019) …………………………………..…..8-9

*Polelle v. Fla. Sec'y of State*,
131 F.4th 1201 (11th Cir. 2025) …………………………………..…..6

*Salcedo v. Hanna*,
936 F.3d 1162 (11th Cir. 2019) …………………………...………..…….11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) …………………………………...……………5, 12, 18, 20

*Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348,
2022 WL 4091738 (11th Cir. Sept. 7, 2022) …………………….…………10

iii

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) …………………………………….……………..13, 14, 23

*Tsao v. Captiva MVP Rest. Partners, LLC,*
986 F.3d 1332 (11th Cir. 2021) …………………….……………10, 15, 19-20

*Walters v. Fast AC, LLC,*
60 F.4th 642 (11th Cir. 2023) ………….………….….……..……….…9, 10, 15

*Webb v. Injured Workers Pharmacy, LLC,*
72 F.4th 365 (1st Cir. 2023) …………………………………...………22

**Statutes**

15 U.S.C. § 1681 ....................................................................2, 8, 21

28 U.S.C. § 1447 ...........................................................................4

50 U.S.C. § 1881a ……………...………………….………………16-17

## INTRODUCTION

Raising the issue of Nelson's standing *sua sponte*, this Court requests supplemental briefing on whether Nelson's expenditure of time and money to correct her inaccurate personal identification information ("PII") is concrete harm sufficient to establish standing, and, if not, whether Nelson otherwise has standing. Nelson's expenditures demonstrate the type of concrete harm this Court has previously determined is sufficient to establish Article III standing. Moreover, Nelson has Article III standing because she suffered an increased risk of identity theft due to Experian's reporting of the inaccurate PII.

Nelson originally filed this action just over four years ago in the Circuit Court of Etowah County, Alabama. [App. Doc. 21-1, pp. 25-38].[1] Shortly thereafter, on June 30, 2021, Experian filed a Notice of Removal, certifying that the District Court had proper jurisdiction. [*Id.* at pp. 14-17]. On August 19, 2021, Experian moved for judgment on the pleadings based on an alleged lack of causation and damages – essentially arguing Nelson lacked concrete injury for Article III standing. [*Id.* at pp. 68-82]. After Nelson filed her response, the District Court, like here, ordered additional briefing on standing and asked the Parties: "Does bearing the cost of

_____

[1] "App. Doc." references this Court's Docket. "Doc." references the District Court's docket.

sending one (or successive) dispute letter(s) to Experian confer Nelson with Article III standing to sue Experian under Section 1681i and Section 1681n of the Fair Credit Reporting Act?". [*Id.* at pp. 83-94; Doc. 18]. The District Court ultimately found Nelson had Article III standing, and for good reason. [App. Doc. 21-1, pp. 95-106]. Just last month at Oral Argument, Counsel for Experian even agreed that the District Court's ruling was sound and supported by Eleventh Circuit precedent. [Recording of Oral Argument, May 14, 2025, minute 22:36-23:26] ("But the District Court found standing from the act of having to keep this duty, the writing the letters. In some circuits that would not fly. In this circuit, I think it probably does and so we have not challenged standing on appeal.").

In a classic move of procedural gamesmanship, however, Experian's ever-evolving stance on standing has changed once again. Its contradictory position notwithstanding, Experian now relies on a flawed theory of Article III standing: (1) that Nelson must show her disputed PII was either disclosed to a third party or that there was a substantial risk that it would be disclosed, which Experian claims Nelson has not shown; (2) even if Nelson's disputed PII was disclosed or there was such risk of disclosure, the inaccurate PII is content incapable of producing harm; and (3) that Nelson's expenditures of time and money are self-inflicted harm to manufacture standing. As explained herein, each theory fails.

Although Nelson has clearly shown risk of her inaccurate PII being disclosed, there is no legal requirement that Nelson show that her disputed PII was actually disclosed to a third party to demonstrate concrete harm. And although the evidence shows Nelson's real fear of identity theft and that businesses may confuse the wrong addresses, names, and social security number with Nelson, Experian assumes without adequate justification that the inaccurate PII is harmless error when it is clearly not. Finally, Nelson's expenditures of time and money were indeed to correct real harm: the inaccurate name, addresses, and social security number in Experian's credit disclosure for Nelson, which could and often is – according to Experian's corporate representative – included in credit reports published to third parties.[2] This, of course, could result in serious problems. For instance, an unsolicited credit offer for Nelson could be sent to the wrong address and that person could open a fraudulent account in Nelson's name – resulting in identity theft. This can lead to serious consequences, including financial hardship, a damaged credit score, loan denial, and further legal issues.

---

[2] The way in which Experian arranges its credit reports is of no consequence. Nelson stands on all arguments made in her briefing before this Court and at Oral Argument. In response to Experian's "header information" argument, Nelson directs the Court to her Reply Brief. [App. Doc. 34, pp. 14-17].

But if Experian truly believes Article III standing was absent, it never should have removed this case from state court in the first place. If Experian is correct now, the appropriate remedy is to remand this case with instruction to send it back to the state court where it originated, with attorneys' fees and costs awarded to Nelson for Experian's improper removal.[3]  *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."); *see also Bldg. Materials Corp. of Am. v. Henkel Corp.*, No. 6:15-cv-548-Orl-22GJK, 2017 WL 4082440, at *4 (M.D. Fla. Apr. 17, 2017) (citation omitted) (awarding attorneys' fees and costs "for unnecessarily incurred expenses caused by Defendant's wrongful removal"); *Barnes v. ARYZTA, LLC*, 288 F. Supp. 3d 834, 839-40 (N.D. Ill. 2017) (remanding case and awarding fees and costs to plaintiff where defendant removed case to federal court and then filed a motion to dismiss for lack of subject matter jurisdiction); *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914-15 (N.D. Ill. 2016) (granting plaintiff's motion for remand and attorney fees incurred because defendant "tried to have it both ways" by removing the case to

---

[3] Experian agrees that if this Court finds Nelson lacks standing, it should "remand this case with instructions to send it back to state court." [App. Doc. 69, pp. 9, 27].

federal court and then arguing plaintiff lacked Article III standing "in hopes of achieving outright dismissal, with prejudice").

## STANDARD OF REVIEW

Whether Nelson has Article III standing is a threshold question to be reviewed *de novo*. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 923 (11th Cir. 2020) (en banc) (citing *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1083 (11th Cir. 2019)). Nelson must put forth sufficient evidence, which is to be accepted as true by this Court, to establish Article III standing. *See Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000).

## ARGUMENT

Judge Brasher explained just a few weeks ago that "a plaintiff 'must have [1] an injury in fact – a concrete and imminent harm to a legally protected interest, like property **or money**–that is [2] fairly traceable to the challenged conduct and [3] likely to be redressed by the lawsuit.'" *Maron v. Chief Fin. Officer of Fla.*, No. 23-13178, 2025 WL 1416665, at *4 (11th Cir. May 16, 2025) (citation omitted) (emphasis added). Analyzing the issue of standing, Judge Rosenbaum clarified that:

> [t]he "concreteness" requirement ensures the alleged injury is "'real,' and not 'abstract,'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), so "that the plaintiff has a real stake in the litigation," *Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023) (en banc). Tangible harms, such as "physical injury and financial loss," **easily** satisfy this requirement." *Id.* But intangible harms may also be concrete. *Id.*

*Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1209 (11th Cir. 2025) (emphasis added). "First, we ask if the violation itself caused harm, whether tangible or intangible, to the plaintiff. If so, that's enough. If not, we ask whether the violation posed a material risk of harm to the plaintiff." *Muransky*, 979 F.3d at 928. The relevant showing for Article III standing purposes is injury to Nelson. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 181 (2000). Here, Nelson has shown her injury is real – Experian's failure to reinvestigate her inaccurate PII caused tangible and intangible harm and further posed a material risk of harm to Nelson (i.e., expenditure of time and money and risk of identity theft).

First, Nelson's tangible harm easily satisfies the concreteness requirement: as alleged in her Complaint and then testifying under oath both in her Interrogatory Responses and during her deposition, Nelson explained that she paid postage for certified mail correspondence to Experian to dispute the inaccurate PII. [App. Doc. 21-1, p. 32 at ¶ 33] ("Plaintiff incurred the cost of sending her three letters to Experian by certified mail with return receipt requested."); [Doc. 66-12, p. 11 at Response No. 21] (stating that the actual damages suffered because of Experian's conduct is "$20.70 for certified mail costs for correspondence sent to Experian."); [App. Doc. 21-5, p. 75 at p. 282:3-16] (testifying as to interrogatory response showing actual damages suffered). The evidence shows Nelson's three separate dispute letters along with the postage expenses Nelson incurred. [Doc. 66-5; Doc.

66-6; Doc. 66-7].  Moreover, Nelson testified in her deposition as to the time she spent disputing the inaccurate PII to Experian.  [App. Doc. 21-5, p. 8 at 16:20 - 17:13, pp. 45-46 at 164:18 - 166:10].  Nelson's efforts disputing the inaccurate PII were also detailed in her Complaint.  [App. Doc. 21-1, pp. 26-32 at ¶¶ 12-32].

Even without the time and money Nelson spent disputing the inaccurate PII, Nelson's intangible harm further satisfy the concreteness requirement.  Although Experian assumes Nelson's disputed PII was merely harmless and claims Nelson made only "a passing suggestion that the dissemination of the relevant errors would increase her risk of identity theft", the record reveals otherwise.  [App. Doc. 69, p. 17].  Nelson's second dispute letter specifically told Experian why its reporting of inaccurate PII is harmful:

> I asked that this be investigated because I am concerned about identity theft.  I don't know if someone has stolen my identity and that is why the incorrect name, addresses and social security number are on my report.  Also, if not identity theft, I don't want businesses thinking that the wrong addresses are mine and sending my information to the wrong addresses or the wrong name is me and sending someone with that name my information.  Please investigate and remove the inaccurate addresses, name and last four of the social security number.

[Doc. 66-6].  Nelson reiterated this in her Complaint. [App. Doc. 21-1, pp. 27 at ¶ 9, 30 at ¶ 25] ("Experian knows, or should know, that consumers have an interest in offers of credit not being sent to incorrect addresses or that have incorrect names associated with the consumer in order to prevent possible identity theft.").

7

Experian's corporate representative further testified that the inaccurate PII Nelson disputed was information that can be and sometimes is a part of a consumer's report that is furnished to third parties. [App. Doc. 21-3, pp. 16-17 at 47:19 – 49:21]. When applying the law to the evidence in the record, Nelson has clearly shown concrete harm sufficient to establish Article III standing.

I. **Nelson Has Shown a Concrete Injury Based on the Cost Incurred and Time Spent Disputing Her Inaccurate PII.**

Finding standing for Nelson, the District Court stated that: "The Eleventh Circuit has held, in the context of an [sic] FCRA claim, that 'incurr[ing] out-of-pocket expenses trying to correct misinformation on [a] credit report,' which includes 'postal expenses,' constitutes an injury in fact. *See Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1207 (11th Cir. 2019)."[4] [App. Doc. 21-1, p. 100]. Following this Court's guidance from *Pinson*, Nelson's postage costs were deemed a concrete injury "because Section 1681i of the 'FCRA contemplates that consumers will bear the cost of at least three dispute letters.'" *Id.* In addition, the District Court found that the time Nelson spent attempting to correct the disputed PII constituted a

---

[4] Experian misstates *Pinson*'s holding. [App. Doc. 69, p. 12]. It argued *Pinson* held "'incur[ing] out-of-pocket expenses trying to correct misinformation on [a] credit report' **may** constitute a concrete harm." *Id.* (citation omitted) (emphasis added). Yet, the Eleventh Circuit explicitly held said expenses do constitute concrete harm. *See Pinson*, 942 F.3d at 1207.

concrete injury pursuant to *Pinson* and *Pedro*. *See id.* This, the District Court got right.

In *Pinson*, the Eleventh Circuit recognized "out-of-pocket expenses, such as postal expenses" in attempt "to correct misinformation on [a] credit report" show concrete harm. *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019). Following *Pedro*, this Court identified three separate "actual, concrete, and particularized injuries: that [the plaintiff] lost time communicating with JPMorgan Chase and TransUnion; that [the plaintiff] incurred out-of-pocket expenses trying to correct misinformation on [the plaintiff's] credit report; and that [the plaintiff] was denied access to credit and paid higher car insurance premiums as a result of JPMorgan Chase's conduct." *Id.* Though only one of Pinson's identified harms – that the plaintiff was denied credit and had to pay higher insurance premiums – is not present here, *Pinson* did not say that a plaintiff must show all three injuries to maintain standing. In fact, the Court indicated the opposite: "We have held that the time spent by a person attempting to correct a false credit report constitutes a concrete injury for purposes of an [sic] FCRA claim." *Id.*

*Pinson* is not an outlier. Even more recently, this Court held that "**several** concrete, particularized harms" showed standing, including time and money spent to dispute a debt. *Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023) (emphasis added) ("Our precedent recognizes **each** of these harms as a concrete

injury in fact. We have held that such injuries include not only 'straightforward economic injuries,' like lost money but also 'more nebulous' ones, *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021), like wasted time . . ."); *see also, e.g.*, *Harb v. Westlake Servs. LLC*, 748 F. Supp. 3d 1170, 1180-82 (11th Cir. 2024) (relying on *Walters* and finding, in part, that lost time was a garden-variety harm under Article III and the plaintiff's testimony as to lost time was sufficient to establish standing); *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *1 (11th Cir. Sept. 7, 2022) (finding standing based on evidence of wasted time and emotional distress since "[o]ur precedents have made clear that the harm that Toste described–including time wasted in trying to determine the correct amount of his debt and emotional distress manifesting in loss of sleep–can be sufficiently concrete to confer Article III standing.").

Similar to *Walters*, in *Pedro v. Equifax, Inc.*, the Eleventh Circuit found three distinct reasons that showed the plaintiff had concrete standing to bring FCRA claims: (1) "the harm caused by the alleged violation of the Act–the reporting of inaccurate information about [the plaintiff]'s credit to a credit monitoring service–has a close relationship to the harm caused by the publication of defamatory information . . ." ; (2) "she alleged that she 'lost time … attempting to resolve the credit inaccuracies."; and (3) "her credit score dropped 100 points . . . ." *Pedro v.*

*Equifax, Inc.*, 868 F.3d 1275, 1279-80 (11th Cir. 2017) (citations omitted). Again, nothing indicates that the Court required all three injuries for the plaintiff to satisfy Article III standing, and a close reading shows that is because it does not. *See id.* (citation omitted) ("Pedro **also** alleged a concrete injury because she alleged that she 'lost time … attempting to resolve the credit inaccuracies.'") (emphasis added).

Like here, the Eleventh Circuit requested supplemental briefing about the injury in fact requirement in *Losch v. Nationstar Mortg. LLC*. This Court recognized that "[u]nder *Pedro*'s reasoning, Losch needn't show that the false reporting caused his credit score to plummet; the false reporting itself was the injury." *Losch v. Nationstar Mortg. LLC,* 995 F.3d 937, 943 (11th Cir. 2021) (citations omitted). Evidence of inquiries on Losch's credit report being sent to third parties was one way in which this Court found injury in fact to establish standing, but that was not the only way. Relying on Losch's deposition testimony and affidavit, Judge Newsom's standing analysis continued: "**Separately**, Losch has shown a concrete injury in the form of the emotional distress and time he spent contesting the inaccurate information." *Id.* at 943 (emphasis added). "Because there is no question that wasted time is a concrete harm, *see Salcedo v. Hanna*, 936 F.3d 1162, 1172-73 (11th Cir. 2019), Losch has standing to pursue his claims so long as even a small part of the injury is attributable to Experian." *Id.* Judge Newsom's analysis in *Losch* equally applies here. Relying on Nelson's testimony and the certified mail postage

receipts for the dispute letters sent to Experian, Nelson "has shown a concrete injury in the form of the [money] and time [s]he spent contesting the inaccurate information." *Losch*, 995 F.3d at 943.

### A. Nelson's Disputed Inaccurate PII *Caused* Concrete Harm.

Contrary to Experian's assertion that controlling precedent recognizes Nelson's disputed PII "is incapable of producing harm," no binding authority has expressly held such. [App. Doc. 69, p. 8]. Experian's attempt to equate Nelson's disputed PII with the brief mention of "the dissemination of an incorrect zip code" in *Spokeo* and the printing of too many credit card numbers on a receipt like in *Muransky* is misplaced, as those cases involved fundamentally different types of alleged harm. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 342 (2016) (stating "[i]t is difficult to imagine how the dissemination of an incorrect zip code, **without more**, could work any concrete harm.") (emphasis added); [App. Doc. 69, p. 20]. While Experian further relies on a Second Circuit case that found an "[i]ncorrect address information, a one-year disparity in birth year, and slight variations of the appellant's name are the types of inaccuracies that do not, **without more**, 'work any concrete harm' by virtue of their dissemination alone", that is not the situation at hand. *Phipps v. Experian Info. Sols., LLC*, No. 23-7529-cv, 2024 WL 5001842, at *2 (2d Cir. Dec. 6, 2024) (emphasis added); [App. Doc. 69, p. 20]. The problem for Experian is that Nelson has provided the additional evidence (i.e., the "**more**") that *Spokeo* and

*Phipps* lacked: Nelson spent time and money to correct inaccurate PII to force Experian to abide by its legal duties under the FCRA and to protect herself from identity theft.

Unlike here, the plaintiff in *Phipps* provided few arguments on appeal related to the district court's decision that the evidence failed to show concrete financial injury traceable to the defendant's conduct. *See Phipps*, 2024 WL 5001842, at *2. Notably, the district court found that while the plaintiff had endured hardship, it was wholly unrelated to the disputed information at issue, but instead was due to a lower credit score based on the adverse status of the plaintiff's accounts. *Phipps v. Experian Info. Sols., Inc.*, No. 7:20-CV-3368 (NSR), 2023 WL 6215304, at *4-5 (S.D.N.Y. Sept. 23, 2023). On appeal, Phipps's standing argument simply focused on the Supreme Court's holding in *TransUnion LLC v. Ramirez*. *See Phipps*, 2024 WL 5001842, at *2 (noting that "Phipps did not attempt to argue [financial] harms, or any other injuries suffered, were connected to the inaccurate information . . ."). Nelson does no such thing.

Likewise, finding concrete harm sufficient for Article III standing for Nelson does not disrupt the Supreme Court's decision in *TransUnion* as Experian suggests. [App. Doc. 69, p. 9, 26]. In *TransUnion*, the Supreme Court looked at a distinct Article III standing issue: "whether the mere existence of a misleading OFAC alert in a consumer's internal credit file at TransUnion constitutes a concrete injury" when

it was not disclosed to a third party. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414-15, 434 (2021). Here, Nelson neither suggests nor contends that the mere existence of her inaccurate PII, standing alone, shows concrete harm. While *TransUnion* held the mere existence of misleading information on the plaintiffs' credit reports did not show concrete harm sufficient to show Article III standing, it did not foreclose other avenues. The Supreme Court even specified that "[i]f a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.* at 425. The Supreme Court also considered risk of future harm to show concrete injury but found it "difficult to see how a risk of future harm could supply the basis for a plaintiff's standing when the plaintiff did not even know that there was a risk of future harm." *Id.* at 438 (noting that "the plaintiffs did not present any evidence that the 6,332 class members even knew that there were OFAC alerts in their internal TranUnion credit files"). Unlike in *TransUnion*, Nelson not only knew about the inaccurate PII, but she spent her own time and money disputing the inaccuracies on three separate occasions. In her second dispute letter, Nelson made clear that she was "concerned about identity theft" and that she did not "want businesses thinking that the wrong addresses are [hers] and sending [her] information to the wrong addresses or the wrong name is [her] and sending someone with that name [her] information." [Doc. 66-6]. Nelson's disputed inaccurate PII indeed caused harm sufficient to satisfy Article III standing.

## B. Nelson's Expenditures Are Not Self-Inflicted Harm.

Even Experian recognizes two "side[s] of the coin." [App. Doc. 69, pp. 23-24]. On the one side, *Pinson*, *Losch*, and *Pedro* find concrete harm to establish standing where, like here, the plaintiff alleged violations under the FCRA and incurred expenses and time disputing inaccuracies. But on the other, *Clapper v. Amnesty Int'l USA*, *Muransky*, and *Tsao* – none of which involved FCRA claims like Nelson's – found no standing where time and/or money spent to mitigate a harm that is not concrete could not create standing. *Clapper*, *Muransky*, and *Tsao* demonstrate a clear divergence from Nelson spending her own time and money sending dispute letters to Experian in attempt to correct the inaccurate PII on her credit report and force Experian to comply with its legal duties under the FCRA. While Nelson agrees with the District Court and believes the appropriate analysis applies *Pinson*, *Losch*, *Pedro*, and the more recent *Walters* case, Experian argues cases on the other side of the coin apply. An analysis of each is therefore in order.

Both *Tsao* and *Muransky* largely rely on the holding in *Clapper*, but it stands in stark contrast to the case at hand. *Clapper* involved an amendment to the Foreign Intelligence Surveillance Act (FISA) that Congress enacted after the September 11th terrorist attacks in order "to meet the challenges of modern technology and international terrorism" by not requiring "the Government to demonstrate probable cause" or "to specify the nature and location" of electronic surveillance when the

target is a foreign power or agent of said foreign power. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 403-04 (2013). Suit was filed by "attorneys and human rights, labor, legal and media organizations" on the same day that "the FISA Amendments Act was enacted . . . seeking (1) a declaration that § 1881a, on its face, violates the Fourth Amendment, the First Amendment, Article III, and separation-of-powers principles and (2) a permanent injunction against the use of § 1881a." *Id.* at 406-07. Applying an "especially rigorous" approach since reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional", the Supreme Court found respondents lacked Article III standing, recognizing the purpose of the separation of powers to prevent the courts from using judicial powers to overtake power from the political branches of our government. *See id.* at 408 (citation omitted) (quotations omitted). The Supreme Court also noted that it "often found a lack of standing in cases in which the Judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs." *Id.* at 409 (citations omitted). In addition, respondents had no knowledge of how the government implemented its targeting practices under § 1881a and instead made mere assumptions that their communications would be targeted. *See id.* at 411-14 ("In sum, respondents' speculative chain of possibilities does not establish that injury

based on potential future surveillance is certainly impending or is fairly traceable to § 1881a.").

Unlike *Clapper*, where the Supreme Court held respondents' "self-inflicted injuries are not fairly traceable to the Government's purported activities under § 1881a," as there was "mere conjecture about possible government actions", here, as the District Court noted, the time and money Nelson spent disputing inaccurate PII is harm that is fairly traceable to Experian's conduct as it dealt directly with Nelson's inaccurate PII in her Experian credit report. *Id.* at 418, 420. Moreover, the record reflects that the disputed PII could be disclosed to third parties and Nelson feared that it would subject her identity theft. [Doc. 66-6; App. Doc. 21-3, pp. 16-17 at 47:19 – 49:21].

In the same way, *Muranksy* fares no better for Experian. Experian highlights portions from the *Muransky* decision and declares that: "Under this Court's precedent, whether [Nelson's] **costs** are a cognizable injury 'necessary rises or falls' with whether the risk posed by Nelson's identifying information 'is itself a concrete harm.'" [App. Doc. 69, pp. 9, 21-23] (emphasis added) (claiming that the plaintiff in *Muransky* "spent time **and money** to mitigate a perceived harm") (emphasis added). But *Muransky* never said that; expenditure of costs was not considered at all. *See* 979 F.3d at 930-31 (considering wasted time spent destroying or safeguarding a receipt and the risk caused by a FACTA violation). Rather, *Muransky*

involved an appeal from objectors to a class action settlement that was being finalized while *Spokeo* was pending before the Supreme Court, and the appeal was filed after *Spokeo* was decided. *See id.* at 920-21. Muransky alleged violations of the Fair and Accurate Credit Transactions Act (FACTA) where Godiva printed too many digits of credit card numbers on customer receipts in violation of the statute, which was enacted to prevent identity theft. *See id.* at 920. Ultimately, this Court held that, unlike here, "[b]ecause the plaintiff alleged only a statutory violation, and not a concrete injury, he has no standing." 979 F.3d at 921 (citing *Spokeo*). Importantly, however, this Court explained it had no facts supporting harm to consider, but it "cannot say that no one could ever show standing for a similar procedural violation." *Id.* at 936.

Unlike here where Nelson has shown both time and money spent disputing the inaccurate PII, all that was shown in *Muransky* was "the bare procedural violation." *Id.* at 921. Godiva violated the statute by printing too many digits, but the conduct at issue was that "a Godiva clerk handed Muransky a receipt containing a portion of his own credit card information." *Id.* at 932. There was no pleading "about any specific risk from the sequence of numbers included on his receipt" or any showing of how Muransky was harmed. *Id.* at 934. "[T]he plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Id.* at 924. This, Nelson has done as the Eleventh

Circuit recognizes plaintiffs may show concrete harm by "show[ing] that the statutory violation itself caused a harm." *Id.* at 926 ("Tangible harms are the most obvious and easiest to understand; physical injury or financial loss come to mind as examples."). Again, Nelson's expenditures of time and money are enough.

Similarly, *Tsao* does not support Experian's argument. *Tsao* was a data breach case against a restaurant whose point-of-sale system was hacked, exposing its customers' credit card and other financial information. *See Tsao* v. *v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1335 (11th Cir. 2021). On appeal, this Court considered whether Tsao had standing through a substantial risk of future identity theft or through mitigation efforts taken to prevent it. *See id.* at 1334-35. The district court below had found that the allegations of harm was merely evidence of a data breach – nothing more. *See id.* at 1337. This Court agreed and recognized that "Tsao immediately cancelled his credit cards following disclosure of the PDQ breach, effectively eliminating the risk of credit card fraud in the future." *Id.* at 1344-45. In contrast, Nelson cannot unilaterally fix her inaccurate PII that Experian is reporting, and Nelson has repeatedly disputed it to eliminate the risk of identity theft. Instead, Nelson is left without recourse.

Notably, in *Tsao* this Court also found a similar data breach case from the Eighth Circuit to be persuasive in finding there was no real harm beyond the data breach. *See id.* at 1342-43. Both the plaintiffs from the Eighth Circuit case and Tsao

relied on a 2007 United States Government Office report on data breaches to support their identity theft theory of harm. *See id.* Although the Report suggests why disputed PII, like Nelson's, could create a substantial risk of identity theft, this Court pointed out it did not show why Tsao was at risk because "compromised credit or debit information, **without additional personal identifying information**, 'generally cannot be used alone to open unauthorized new accounts.'" *Id.* at 1342 (emphasis added). Unlike Tsao, who did not allege that PII was compromised and therefore could not be used to open unauthorized accounts thereby increasing the risk of identity theft, the same cannot be said for Nelson.

## II. Nelson Also Shows Concrete Injury Because Nelson's Inaccurate PII Increases the Risk of Identity Theft.

This Court's analysis can end here, but if it finds that Experian's FCRA violation did not directly cause Nelson to spend time and money, the next question to ask is "whether the violation posed a material risk of harm to [Nelson]." *Muransky*, 979 F.3d at 928 ("First, we ask if the violation itself caused harm, whether tangible or intangible, to the plaintiff. If so, that's enough."). It did. Nelson shows Article III standing for a separate reason: an increased risk of identity theft.

As this Court recognized, when considering standing "*Spokeo* instructs that we may consider 'both history and the judgment of Congress.'" *Muransky*, 979 F.3d at 926 (quoting *Spokeo*, 578 U.S. at 331) (recognizing "congressional judgment may

illuminate a concrete injury" and that "[we] have also relied on the judgment of Congress to discern concrete injuries"). "'Congress enacted the [FCRA] to protect consumers from unfair reporting methods while also ensuring that the credit system would retain the accuracy required by the banking system to efficiently allocate credit.'" *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359 (11th Cir. 2024) (citations omitted). The statute's purpose is to ensure "[a]ccuracy and fairness of credit reporting" because "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating **consumer credit and other information on consumers**." 15 U.S.C. § 1681(a)(3) (emphasis added). The FCRA was amended by Congress in 2003 to include measures to protect consumers from identity theft. *See* 15 U.S.C. § 1681(g). This Court has explained that, for instance, "if a statute protects against a lack of information, the denial of access to information is a concrete injury." *Muransky*, 979 F.3d at 930 (explaining that "some statutory violations, by their very nature, will be coextensive with the harm that Congress was trying to prevent . . ."). At its core, the FCRA was designed to protect consumers like Nelson from the harm at issue – inaccurate credit reporting and to prevent identity theft. It follows then that Nelson's harm here must be concrete. Experian's refusal to reinvestigate her disputed PII and provide Nelson with an accurate credit report with accurate PII deprives her of the very thing Congress was trying to protect against. *See id.*

Following *Lujan v. Defenders of Wildlife*, Nelson is required to show evidence of standing, which is to be taken as true by this Court, but the law does not require that Nelson detail a step-by-step guide on exactly how a thief may steal her identity as Experian seems to suggest. *See* 504 U.S. 555, 561 (1992); [App. Doc. 69, pp. 17-18]. Unlike *Muransky* where the plaintiff neither pleaded nor showed that the plaintiff was subject to an increased risk of identity theft, Nelson did plead and explain how she was subject to an increased risk of identity theft. *See* 979 F.3d at 934; [App. Doc. 21-1, pp. 27 at ¶ 9, 30 at ¶ 25] (stating "Experian knows, or should know, that consumers have an interest in offers of credit not being sent to incorrect addresses or that have incorrect names associated with the consumer in order to prevent possible identity theft."). As stated *supra*, when Experian publishes Nelson's inaccurate PII, it increases the likelihood that a credit offer will be sent to the wrong person, who can open a fraudulent account in Nelson's name, and cause harm to Nelson's credit – leading to serious consequences. This is not a hypothetical scenario, but a well-documented path for how identity theft occurs – precisely the kind of real-world harm the FCRA was designed to address and one that the evidence shows Nelson feared. [Doc. 66-6].

The risk of fraud or identity theft is only heightened when it involves "high-risk information such as Social Security numbers and dates of birth -- especially when accompanied by victims' names . . . ." *Webb v. Injured Workers Pharmacy,*

*LLC,* 72 F.4th 365, 376 (1st Cir. 2023) (citations omitted) (quotations omitted). Leaning on guidance from *TransUnion*, the Third Circuit found that when relying on a "theory of injury is a substantial risk of identity theft or fraud, a plaintiff suing for damages can satisfy concreteness as long as he alleges that the exposure to that substantial risk caused additional, currently felt concrete harms. For example, if the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress or spend money on mitigation measures like credit monitoring services, the plaintiff has alleged concrete injury." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155-56 (3d Cir. 2022) (finding concrete injury where personal identification information and other financial information was exposed in a data breach case). Nelson has done just that: as a result of Nelson's "knowledge of the substantial risk of identity theft," she spent her own time and money. *See id.*

*Green-Cooper v. Brinker Int'l, Inc.* is further instructive. *See* 73 F.4th 883 (11th Cir. 2023). Targeting Chili's customers' card data and personally identifiable information, hackers posted customers' information in an online market for stolen payment data. *See id.* at 886. Following the district court certifying the class, this Court reviewed several issues on appeal, including whether "the District Court's class certification order violate[d] [this Circuit's] precedent on Article III standing for class actions." *Id.* at 888. Standing for three plaintiffs were considered, but one is illustrative here: an individual had used his credit card at a Chili's, had called the

restaurant's national office and local chain, and called his bank about the breach and canceled the card, "but [he] never experienced fraudulent charges." *Id.* at 887. Yet, this Court found "all three plaintiffs adequately allege[d] a concrete injury sufficient for Article III standing" since their information had been compromised and found that there was "a substantial risk of future injury – future misuse of personal information associated with the hacked credit card."[5] *Id.* at 890. Similarly, Nelson has shown her PII is compromised because it is inaccurate and exposes her to a risk of identity theft; she has also spent time and money disputing the inaccurate PII and faces a substantial risk of future injury – identity theft. This Court should therefore find that Nelson has satisfied Article III standing.

## CONCLUSION

Based on the arguments set forth above, this Court should hold that Nelson has shown Article III standing. To the extent this Court finds Nelson has not satisfied Article III standing, Nelson requests that this Court remand this case to the District Court with instructions to remand back to state court, with attorneys' fees and costs awarded to Nelson for Experian's improper removal.

---

[5] Though this Court found that all three plaintiffs adequately alleged a concrete injury, two plaintiffs had "a fatal causation issue" because the evidence showed they visited Chili's outside of the affected class period. 73 F.4th at 890-91.

# CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(a)(7)(B), counsel certifies that this brief contains 6,000 words, including footnotes as counted using Microsoft Word 365.

Moreover, the brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirement of FED. R. APP. P. 32(a)(6). The brief is prepared in proportionally spaced Times New Roman 14-point typeface using Microsoft Word 365.

*/s/ W. Whitney Seals*
W. Whitney Seals,
Attorney for the Appellant

**OF COUNSEL:**
**COCHRUN & SEALS, LLC**
P. O. Box 10448
Birmingham, AL 35202-0448
T: (205) 323-3900
F: (205) 323-3906
E: filings@cochrunseals.com
.

*/s/ Brooke B. Rebarchak*
J. Matthew Stephens
Brooke B. Rebarchak
Attorneys for the Appellant

**OF COUNSEL:**
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35205
T: (205) 939-0199
E: mstephens@mtattorneys.com
E: brebarchak@mtattorneys.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify in compliance with 11th Cir. R. 31-5, that on June 10, 2025, a true and correct copy of the foregoing Supplemental Brief of Appellant Jessica Nelson was electronically filed with the Clerk of the Court using the Court's E-system, which will automatically send notification to counsel of record.

Dated: June 10, 2025

*/s/W. Whitney Seals*
*Counsel for Appellant*
*Jessica Nelson*